1813.

*Chambersburg,*
*Saturday,*
*October* 9.

## DUNCAN and wife *against* FORRER.

THIS was an appeal from the decision of *Brackenridge* J. at a Circuit Court for *Cumberland* in *April* 1809.

*Arnold Duncan,* and his wife, who was one of the daughters and legatees of *Robert Patterson* deceased, brought this action of account render against *Forrer* as the surviving executor of *Patterson.* The issue on which the cause went to trial was *never bailiff or receiver;* and the verdict being for the plaintiffs, judgment *quod computet* was entered in the Circuit Court. By the report of his honour, the case was thus:

*Christian Garber,* by articles of agreement dated the 29th of *May* 1792, covenanted to convey to *Patterson* and *Forrer* their heirs and assigns, a piece of land containing 50 acres by metes and bounds, in consideration of 606*l.* payable by instalments, and of the making for him two tons of bar iron in two and three years from the date. Upon the 12th *June* following, *Garber* conveyed by deed the land to *Patterson* and *Forrer* their heirs and assigns, " to have and to hold " the same to them their heirs and assigns, to and for their " proper use for ever." On the 26th *September* 1792, *Patterson* made his will, whereby he directed that the whole of his estate real and personal should be sold, and devised one third to his widow, and the remainder to his nine children. He appointed his widow and *Forrer,* who had intermarried with one of his daughters, executors; and on the 9th of *October* 1792, letters testamentary issued to both executors. On the 14th of *April* 1798, the widow having died, *Forrer* and his wife executed a conveyance to *John Douglass* and others of the premises, in consideration of 2850*l.* It recited the title of the patentee, and the mesne conveyances down to *Patterson* and *Forrer,* and that *Patterson* died seized of one moiety of the lands, having first made his last will, thereby appointing his executors, with power to them or the survivor of them to sell; and the grantors then conveyed the lands with warranty, without further mention of the authority in the will. The suit was brought to oblige the defendant to account for a moiety of the proceeds of this sale.

A last will in *Pennsylvania* does not sever a jointenancy, notwithstanding the act of 1705, which makes a will good and available in law for the granting, conveying and assuring of lands &c.

Equity will consider jointenants as tenants in common, when they purchase lands with a view to expend large sums of money in the improvement of them.

It appeared on the trial, that *Patterson* had paid a larger portion of the consideration money than *Forrer*, but the precise difference was not ascertained. The widow paid 100*l.* out of the funds of the testator, and *Forrer* paid 180*l.* after *Patterson's* death. He also made many valuable improvements on the premises, estimated at above 1500*l.* One of the witnesses testified, that he understood the purchase was made, for erecting a forge for the manufacture of iron by *Patterson* and *Forrer;* but nothing was done by them in further prosecution of that object.

It was admitted at the trial that a jointenancy was created by the words of the deed from *Garber;* but the judge delivered his opinion to the jury, that under all the circumstances of the case, the plaintiffs were entitled to a verdict, and he also gave his opinion, that the will of *Robert Patterson* was a severance of the jointenancy, and defeated the *jus accrescendi.*

*Duncan* for the appellees, contended for the same doctrine in this Court. He argued: 1. That though a legal joint-tenancy, it was an equitable tenancy in common, in consequence of the object for which the land was purchased, viz. for the manufacture of iron, and in consequence of the unequal contribution of the parties toward the purchase; for which purpose he cited *Lake* v. *Craddock* (*a*), *Rigden* v. *Vallier* (*b*), *Caines* v. *Lessee of Grant* (*c*), *Sugden* 407., and *Addison's Rep.* 330. 2. That in *Pennsylvania,* a last will was a severance, by virtue of the *Laws agreed upon in England, No.* 15., 1 *State Laws App.* 22., by which it was provided, that wills attested by two witnesses, should be of the same force as to lands, as other conveyances; and also by the first section of the act of 1705, 1 *State Laws* 53., by which last wills were made good and available for *conveying,* granting, and assuring lands.

He also argued, that the recital by *Forrer* in his deed to *Douglass,* amounted to a declaration, that he held as to one half in trust to execute the will of *Patterson;* which was equivalent to a covenant by him so to hold it. 1 *Powel on Con.* 237., *Griffith* v. *Penrose* (*d*)

(*a*) 3 *P. Wms.* 158.          (*c*) 5 *Binn.* 150.
(*b*) 3 *Atk.* 734.          (*d*) 4 *Binn.* 231.

*Carothers* and *Watts* contra, answered, that as the judge had told the jury that the will was a severance, there must be a new trial. For that doctrine there was no warrant, unless by a last will a man could make a fee simple out of an estate tail, or could give away that, which ceased to be his before his will took effect. That in point of equity, there were no circumstances to alter the law of the case, this not being a purchase for a partnership, or to expend money upon in improvements; and that as to the recitals in *Forrer's* deed, they were made to satisfy a purchaser, and at all events could not be taken advantage of by strangers to that conveyance. They cited 2 *Cruise* 504. 525., *Co. Litt.* 185, *sec.* 286., *Co. Litt.* 352 a. b.

Tilghman C. J. The counsel for the plaintiffs admit the general maxim, *that the right of survivorship is preferred to the last will* by the common law; but they contend, 1st. that the law of *Pennsylvania* differs in this respect from the common law; and 2dly, even supposing that it were not so, yet under the circumstances of this case, a court of chancery would consider *Patterson* and *Forrer* as tenants in common, and therefore the verdict being right, there ought not to be a new trial, even though the judge might have stept a little too far in stating the effect of the will as to the severance of the jointure.

1. At the time of *Patterson's* death, we had no act of assembly expressly affecting an estate in joint-tenancy, although one has been made since, which has no operation on the present case. But reliance is placed on the act " con- " cerning the probate of wills" &c., passed in 1705, by which it is enacted, that a will proved as therein directed, " shall " be good and available in law, for the granting, conveying, " and assuring of the lands or hereditaments, thereby given " or devised, as well as of the goods and chattels, thereby " bequeathed." The argument is, that the will operates as a *grant* or *conveyance*, and therefore severs the jointure. But I see nothing in the act to warrant this inference. The object of the law was, to enable all persons to dispose of their *devisable* lands by last will, but not to alter the nature of their estates. It was never supposed that a tenant in tail, might dispose of his lands by devise, so as to bar his issue. When a will takes effect, it operates as a species of convey-

ance; but a conveyance which does not take effect till after the death of the testator. But the rule of law being fixed, that at the instant of death the right of survivorship attaches, in preference to the will, the act of assembly does not embrace the case. This appears to be the plain construction of the act, and I have never before heard of any other. The plaintiffs' counsel has not produced the decisions of any court in support of his arguments.

2. Whether the verdict is right, is not altogether clear. There certainly are cases in which equity will consider joint-tenants as tenants in common; and one of those cases is, where a purchase of land is made by two persons, with a view to expending large sums of money in the improvement of it. It is said that this purchase was made with a view to the erection of iron works. Perhaps it was. One of the witnesses said that *he understood so;* but he did not say when or from whom he got his information. A stronger circumstance appears in the articles of agreement for the purchase, previous to the conveyance. Part of the consideration was two tons of iron, to be made in the years 1794 and 5, (two years and more after the date of the articles). In confirmation of an intent to hold as tenants in common, the plaintiffs rely also on the deed from *Forrer* and wife, conveying the land to *Douglass* and others, in which it is recited, that *Patterson* " died seized *in part* of the said undivided " 53 acres of land, having made his last will and testament, " by which he authorized his executors to sell his lands, for " the purposes mentioned in the said will." On the other hand it is said, that no iron works were erected, and that after the death of *Patterson* the defendant expended upwards of 4000 dollars in improvements on his private account. With regard to the recital in the defendant's deed to *Douglass*, he says that it was done to satisfy the purchaser, and not from any doubt of his own title. In this mixt kind of case, consisting of law and fact, it would have been proper for the Court to inform the jury, that the will of itself could have no effect in severing the joint-tenancy, and then the material circumstances might have been laid before them, and the law explained, as applied to those circumstances. But it may be that the jury, understanding that the right of survivorship was defeated by the will, might not think themselves at liberty to enquire farther into the case. In

order to afford an opportunity for such enquiry, I am of opinion that there should be a new trial.

YEATES J. after stating the case very fully, delivered his opinion to the same effect.

The plaintiffs' counsel have insisted that a co-tenant may devise his interest in lands held in joint-tenancy by the laws of *Pennsylvania*. To prove this, it has been urged, that wills as to lands shall have the same force and effect as legal conveyances. 1. *Dall. Laws, App.* 22. *No.* 15. Written wills proved by two witnesses, shall be available in law to convey and assure the lands devised in *Pennylvania* under the old act of 1705, *Sec.* 1. 1 *Dall. Laws* 53. But these provisions evidently presuppose an estate in the lands devised, capable of being passed by will. It will not be said, that because under the act of 16th *January* 1799, (3 *Smith's Laws* 338), tenant in tail may bar the estate tail by deed acknowledged and recorded as the act specially points out, he may effect the same thing by his last will. Nor, if the real state of the law was in unison with the plaintiffs' doctrine, could there be any necessity to enact the law " concerning joint-tenancy" on the 31st *March* 1812, (5 *Smith's Laws* 395), whereby joint-tenancies in all cases, except trusts, are transmuted into tenancies in common. The distinguishing feature of joint-tenancy is, that it disqualifies the party from devising his interest. 3 *Burr.* 1496. He holds under the original grant merely; and unless the joint-tenancy is severed *during his life*, the *jus accrescendi* arises as an inevitable consequence from the nature of the estate. This affords a sufficient answer to the argument deduced from *Patterson's* last will. *Forrer* in a legal view was no further responsible for assets, than as to the legal right of *Patterson* in the premises, and was put to no election by a devise to his wife of the one undivided ninth part of the residue. The recitals in his deed corresponded with the truth of the case in every particular; but it by no means appears that he sold under the authority in the will given to the executors or the survivor. Upon this head, the deed is at least equivocal.

The unequal sums paid by *Patterson* and his widow and *Forrer*, cannot afford any just ground of exception from the general rule of law. If *Forrer* has paid a less sum than he was liable to pay under the terms of his original contract,

1813.

DUNCAN
v.
FORRER.

he must necessarily be responsible to the estate of his father-in-law in some other mode of procedure. Upon this part of the subject it is of moment to state, that he has expended more than 1500*l.* in valuable improvements on lands of which the plaintiffs mean to establish that one moiety belonged to *Patterson,* and was subject to the directions of his last will.

This is not a mercantile case. It is not established clearly that the premises were bought as a forge seat. Certainly no partnership appears by the evidence to have been entered into for that purpose; nor were any erections made, or even *meditated,* for the accomplishment of that object.

Upon the whole, I freely admit that the case bears hard on the children of *Patterson.* This in the nature of things is the case in all instances of estates in joint-tenancy, where the chance of survivorship is not perfectly equal, and where the prospect of families in life rests on the event. Joint-tenancies are seldom or never intended by the purchasers of lands. The law acts by general rules. Where such words are made use of in a deed, as the law will construe to be a joint-tenancy, legal consequences must necessarily flow therefrom, and we are bound to follow the results. If the joint tenancy was not severed in the life time of *Patterson,* his will could not operate upon it, nor defeat the *jus accrescendi.*

I am of opinion that the judgment of the Circuit Court be reversed, and a new trial be awarded.

*Judgment reversed.*